IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Wendy N. and Benjamin N., individually and    :
on behalf of L.N.    :
    :
   and    :
    :
Law Offices of David J. Berney, P.C.    :
1628 JFK Boulevard, Suite 1000    :
Philadelphia, PA  19103    :
    :        CIVIL ACTION NO.
   and    :
    :
Law Office of Benjamin J. Hinerfeld    :
1500 JFK Boulevard, Suite 1020    :
Philadelphia, PA  19102    :
    :
   v.    :
    :
    :
School District of Philadelphia    :
Office of General Counsel    :
440 North Broad Street, Suite 313    :
Philadelphia, PA 19130-4015    :
    :

## COMPLAINT

### PRELIMINARY STATEMENT

1.    This action is brought under the Individuals with Disabilities Education

Improvement Act, 20 U.S.C. §§ 1400 *et seq* ("IDEA") as a result of the School District of

Philadelphia's breach of an IDEA resolution agreement arising from a "resolution session" held

pursuant to 20 U.S.C. § 1415(f)(1)(B) and 34 C.F.R. § 310.510.

2.    Plaintiffs seek to recover attorney's fees and related costs under the IDEA,

Section 504, and the ADA for the instant action and the underlying administrative proceeding.

## JURISDICTION

3.      Jurisdiction is based upon 28 U.S.C. § 1331 and 20 U.S.C. § 1415(f)(1)(B).

4.      Venue in this district is proper under 28 U.S.C. § 1391(b).

## PARTIES

5.      Plaintiffs Wendy N. and Benjamin N. are the parents of L.N. (hereinafter "Parents").

6.      Plaintiff Law Offices of David J. Berney, P.C. (hereinafter "Berney Law Firm") is a law firm that dedicates a large percentage of its practice to the area of special education law.

7.      Plaintiff Law Office of Benjamin J. Hinerfeld (hereinafter "Hinerfeld Law Firm") is a law firm that dedicates a large percentage of its practice to the area of special education law.

8.      Plaintiff Parents, Plaintiff Berney Law Firm, and Plaintiff Hinerfeld Law Firm are collectively referred to herein as "Plaintiffs."

9.      Defendant School District of Philadelphia (hereinafter "Defendant") is a governmental unit that administers the public schools within Philadelphia County.

10.     Defendant has a mailing and office address at the Office of General Counsel, 440 North Broad Street, Suite 313, Philadelphia, PA 19130-4015.

## STATUTORY AND REGULATORY BACKGROUND

11.     The IDEA was enacted to "ensur[e] children with disabilities and the families of such children access to a free appropriate public education and [to] improve[e] educational results for children with disabilities." 20 U.S.C. § 1400(c)(3).

12.     The IDEA and its implementing regulations, 34 C.F.R. pt. 300, require states and local school districts that receive funds under the IDEA to provide school age residents who have disabilities with a "free appropriate public education" ("FAPE").

13.     The IDEA also confers upon school districts an affirmative duty to identify and appropriately evaluate children with disabilities.  20 U.S.C. § 1412(a)(3)(A).

14.     The IDEA further confers upon school districts the requirement to develop, review, and revise an Individualized Education Program ("IEP") for each child with a disability. 20 U.S.C. § 1412(a)(4).

15.     If a school district failed to provide FAPE to one of its students, the IDEA and its implementing regulations provide parents and their child with certain procedural safeguards, including the right to file a due process complaint to remediate the denial of FAPE.  20 U.S.C. § 1415(b)(7).

16.     If a school district failed to provide an appropriate educational evaluation for one of its students, the IDEA also confers upon parents the right to a publicly funded independent educational evaluation ("IEE") for their child.  20 U.S.C. § 1415(b)(1).

17.     If a school district denied FAPE to a student, parents, on behalf of the student, may be entitled to compensatory education for each day that amounts to a denial of FAPE. *See, e.g., Carlisle Area Sch. v. Scott P.,* 62 F.3d 520, 527 (3d Cir. 1995).

18.     A prevailing parent is also entitled to statutory attorney's fees and related costs under the IDEA.  20 U.S.C. § 1415(i)(3)(B).

## STATEMENT OF FACTS

19.     L.N. is currently in fourth grade.

20.     At all relevant times, L.N. was a resident of the School District of Philadelphia and attended a school that was owned and/or operated by Defendant.

21.     Defendant had actual and/or constructive knowledge of L.N.'s ongoing academic problems and yet failed to timely act.

22.     Defendant failed in its child find duties to provide L.N. with a timely and adequate comprehensive multi-disciplinary evaluation in all relevant and suspected areas relating to L.N.'s disability.

23.     Defendant failed to provide IEPs that afforded FAPE.

24.     Defendant failed to address and stop bullying and/or harassment that fellow students subjected L.N. to, which interfered with her education and denied her FAPE.

25.     On or about August 28, 2014, Plaintiffs Wendy N. and Benjamin N. retained Plaintiff Berney Law Firm to investigate possible claims on L.N.'s behalf under the IDEA, Section 504 of the Rehabilitation Act of 1973, and Title II of the American with Disabilities Act and to initiate litigation, if necessary, to remediate Defendant's failure to provide L.N. a free and appropriate public education.

26.     On or about September 23, 2014, owing to a conflict of interest between Plaintiffs Wendy N. and Benjamin N., Plaintiff Benjamin N. retained Plaintiff Hinerfeld Law Firm to investigate possible claims on L.N.'s behalf under the IDEA, Section 504 of the Rehabilitation Act of 1973, and Title II of the American with Disabilities Act and to initiate litigation, if necessary, to remediate Defendant's failure to provide L.N. a free and appropriate public education. Plaintiff Wendy N. continued to be represented by Plaintiff Berney Law Firm.

27.     The representation agreement between Plaintiff Wendy N. and Plaintiff Berney Law Firm contains an assignment of rights provision whereby Plaintiff Wendy N. assigned any right that she may independently have to attorney's fees and expenses that may be owed to her by virtue of any settlement that she may enter into with Defendant arising out of litigation filed on her behalf by Plaintiff Berney Law Firm.

28.     The representation agreement between Plaintiff Benjamin N. and Plaintiff Hinerfeld Law Firm contains a provision whereby Plaintiff Hinerfeld Law Firm is expressly authorized to make legal arguments in favor of attorney's fees and litigation costs as part of any settlement.

29.     On or about January 28, 2015, Plaintiffs Berney Law Firm and Hinerfeld Law Firm filed a joint administrative due process complaint on behalf of Plaintiffs Wendy N. and Benjamin N. alleging that, *inter alia*, Defendant failed to provide L.N. a timely and adequate comprehensive multi-disciplinary evaluation in all relevant and suspected areas relating to L.N.'s disability, failed to provide L.N. IEPs that afforded FAPE, and failed to address and stop bullying and/or harassment that fellow students subjected L.N. to, which interfered with her education and denied her FAPE. To remediate the violations, Plaintiffs Wendy N. and Benjamin N. sought, *inter alia*: (a) compensatory education, (b) a publicly funded IEE, and (c) an IEP that provides FAPE.

30.     Prior to the date of the due process hearing, the parties settled the case pursuant to a "resolution session" held under 20 U.S.C. § 1415(f)(1)(B). *See* IDEA Resolution Agreement L.N., ¶ 9(e). A true and correct copy of the parties' IDEA Resolution Agreement is attached as Exhibit "A".

31.     The Resolution Agreement contains, *inter alia*, the following terms.

    a.     Defendant shall provide one thousand (1000) hours of compensatory education to be valued at $60.00 per hour. These funds may be used to cover the costs of the IEE. *See* Resolution Agreement L.N., ¶ 4(A).

  b.  Defendant shall reconvene the IEP team within fifty (50) days to consider the findings of various evaluation reports and recommendations to ensure Student FAPE. *See* Resolution Agreement L.N., ¶ 4(B).

  c.  Defendant shall pay reasonable attorney's fees and costs for time expended within sixty (60) days of receiving a detailed invoice. *See* Resolution Agreement L.N., ¶ 5.

32.  On or about March 20, 2015, Plaintiffs Wendy N. and Benjamin N. executed the Resolution Agreement. On or about April 1, 2015, Defendant executed the Resolution Agreement. *See* Exhibit "A".

33.  On July 10, 2015, Plaintiff Berney Law Firm forwarded, via email, its bill and supporting timesheets to Defendant attorney Pamela Peltzman. In this correspondence, Plaintiff Berney Law Firm reminded Defendant of its obligations under the Resolution Agreement regarding the payment of reasonable attorney's fees within sixty (60) days. Specifically, Plaintiff Wendy N.'s counsel wrote:

> Pam:
> …
>
> The IDEA resolution agreement requires the School District to pay reasonable attorney's fees and costs within 60 days of receipt of the itemized attorney timesheets. My firm's timesheets and bills are attached to this email. Accordingly, payment of attorney's fees and costs is due by September 5, 2015. As you should be aware, the School District has routinely violated settlement agreements with my clients by failing to pay attorney's fees within the required time period as stipulated in our agreements. In many cases, it has taken the School District over a year and sometimes years to make good on its commitment to pay fees. Accordingly, if I do not receive payment of my client's reasonable attorney's fees within sixty days of this email, I will consider all options, including filing a federal lawsuit. I am not trying to give you or your client a difficult time. I am simply trying to get the School District to honor our agreements and its repeated failures to do so is putting my firm into an untenable position.

...

> I look forward to hearing back from you.
>
> David J. Berney, Esq.
>
> ...

34.     On July 8, 2015, Plaintiff Hinerfeld Law Firm forwarded, via email, its invoice to Defendant attorney Pamela Peltzman.

35.     By September 7, 2015, the sixty (60) day deadline for payment of reasonable attorney's fees and costs passed.

36.     To date, Defendant has not paid Plaintiffs Wendy N. and Benjamin N. any amount in attorney's fees and costs.

37.     There are three billing statements in this case from Plaintiff Berney Law Firm, involving: (a) David J. Berney, Esquire, Principal of Berney Law Firm, (b) Jennifer Sang, Esquire, Associate of Berney Law Firm, and (c) Jon Kruzic, Paralegal of Berney Law Firm.

38.     There are two billing statements in this case from Plaintiff Hinerfeld Law Firm, involving: (a) Benjamin J. Hinerfeld, Esquire, Principal of Hinerfeld Law Firm, and (b) Michelle Payne, Associate of Hinerfeld Law Firm.

39.     Mr. Berney's current billing rate is $495 per hour.

40.     A billing rate of $495 per hour for Mr. Berney for purposes of the underlying administrative action and this federal action is reasonable and falls within the customary and prevailing rates charged by other attorneys of comparable skill, experience, and reputation in the Philadelphia area.

41.     Ms. Sang's current billing rate is $275 per hour.

42.     A billing rate of $275 per hour for Ms. Sang for purposes of the underlying administrative action and this federal action is reasonable and falls within the customary and prevailing rates charged by other attorneys of comparable skill, experience, and reputation in the Philadelphia area.

43.     Mr. Kruzic's billing rate is $100 per hour.

44.     A billing rate of $100 per hour for Mr. Kruzic for purposes of the underlying administrative action and this federal action is reasonable and falls within the customary and prevailing rates charged by paralegals generally.

45.     Mr. Hinerfeld's billing rate is $325 per hour.

46.     A billing rate of $325 per hour for Mr. Hinerfeld for purposes of the underlying administrative action and this federal action is reasonable and falls within the customary and prevailing rates charged by other attorneys of comparable skill, experience, and reputation in the Philadelphia area.

47.     Ms. Payne's billing rate is $225 per hour.

48.     A billing rate of $225 per hour for Ms. Payne for purposes of the underlying administrative action and this federal action is reasonable and falls within the customary and prevailing rates charged by other attorneys of comparable skill, experience, and reputation in the Philadelphia area.

49.     There are additional expert billing statements for related litigation costs: (a) expert costs for Dr. Bonnie Sockett, Ph.D., Licensed Psychologist, Certified School Psychologist and (b) expert costs for Sharon Greis, MA CCC/SLP, BRS-S, Speech-Language Pathologist.

50.    By failing to offer reasonable attorney's fees and costs and by ignoring and/or refusing Plaintiffs' requests to have attorney's fees and costs paid, Defendant has violated the terms of the parties' IDEA resolution agreement.

### History of Delayed Payment

51.    In the last several years, Plaintiff Berney Law Firm has settled dozens of special education cases with Defendant.  The standard practice between Defendant and Plaintiff Berney Law Firm is for Plaintiff Berney Law Firm to email attorney timesheets and litigation invoices to counsel for Defendant.

52.    A majority of the settlement agreements negotiated between Plaintiff Berney Law Firm and Defendant in the cases settled between them contain language that requires Defendant to pay reasonable attorney's fees and costs within sixty (60) days of receiving a detailed invoice.

53.    Similarly, Plaintiff Hinerfeld Law Firm has entered into settlement agreements with Defendant, which contain language that requires Defendant to pay reasonable attorney's fees and costs within sixty (60) days of receiving a detailed invoice.

54.    Despite the language contained in these settlement agreements, in the last few years, Defendant has failed to honor the terms of a number of settlement agreements by refusing to pay attorney's fees and costs within sixty (60) days.

55.    In a number of cases, Defendant has delayed by as much as one (1) year, or longer, in making payments.

### CAUSE OF ACTION – VIOLATION OF IDEA - 20 U.S.C. § 1415(f)(1)(B)

56.    Plaintiffs incorporate the above and below paragraphs as though fully set forth herein at length.

57.     The IDEA provides that a written settlement agreement reached as a result of a resolution meeting shall be enforceable in federal district court.  20 U.S.C. § 1415(f)(1)(B)(iii)(II).

58.     Further, a prevailing party under the IDEA is entitled to reasonable attorney's fees and related costs.  20 U.S.C. §§ 1415(i)(3)(B) and (C).

59.     In the underlying proceedings, Plaintiffs Wendy N. and Benjamin N. incurred attorney's fees and costs in excess of $40,000.

60.     Plaintiffs Wendy N. and Benjamin N. have also incurred attorney's fees and costs in connection with the prosecution of this action.

61.     Plaintiff Wendy N. has assigned the right to attorney's fees and costs to Plaintiff Berney Law Firm.

62.     Plaintiff Benjamin N. expressly authorized Plaintiff Hinerfeld Law Firm to seek attorneys fees, and authorized the Hinerfeld Law Firm to make legal arguments in favor of attorney's fees and litigation costs as part of any settlement.

WHEREFORE, Plaintiffs request judgment as to each count against Defendant in a sum to be fixed by the Court, plus interest, costs, attorney's fees, and any other such relief as this Court deems just.


LAW OFFICES OF DAVID J. BERNEY

_[signature]_

DAVID J. BERNEY, ESQUIRE
Pa. Bar ID No. 67882
VANITA R. KALRA, ESQUIRE
Of Counsel
Pa. Bar ID No. 315451
8 Penn Center
1628 JFK Boulevard, Ste. 1000
Philadelphia, PA 19103
djberney@berneylaw.com
vrkalra@berneylaw.com
215-564-1030 (office)
215-751-9739 (fax)
Attorneys for Plaintiffs Wendy N. and Law
Offices of David J. Berney, P.C.


Date: January 25, 2016

LAW OFFICES OF BENJAMIN HINERFELD

_[signature]_

BENJAMIN HINERFELD, ESQUIRE
Pa. Bar ID No. 78831
2 Penn Center
1500 JFK Boulevard, Ste. 1020
Philadelphia, PA 19102
Ben@Hinerfeldlaw.com
215-575-0495 (office)
215-475.4716 (fax)
Attorney for Plaintiffs Benjamin N. and Law
Office of Benjamin J. Hinerfeld

# Exhibit A

## CONFIDENTIAL
## SETTLEMENT AGREEMENT AND GENERAL RELEASE

### L͏      N͏

It is hereby agreed by and between the School District of Philadelphia (the "District") and WENDY N͏      and BENJAMIN N͏      (collectively "Parents"), individually and on behalf of the child, L͏      N͏      ("Student") (date of birth:      ), all collectively referred to hereinafter as the "Parties" as follows:

**1.    RELEASE BY PARENTS:**  Parents, individually and on behalf of Student, for and in consideration of the mutual promises and terms set forth in this Confidential Settlement Agreement and General Release ("Agreement") and other valuable consideration, from the beginning of time through the date Parents execute the Agreement hereby unconditionally releases and forever discharges the District, its past and present officers, employees, agents, servants and attorneys, the Board of Public Education and their past and present officers, employees, agents, servants and attorneys, the School Reform Commission and their past and present officers, employees, agents, servants, heirs, executors and administrators, successors and assigns ("Releases") of and from any and all actions, causes of actions, suits, claims, losses, injuries, damages and demands whatsoever in law or equity, known or unknown, accrued or not accrued, arising out of the public education of Student, which against the Releases, Parents ever had, now has or which their heirs, executors, administrators, hereafter can, shall or may have for the periods of time described herein.

**2.    CLAIMS RELEASED:**  It is expressly understood and mutually agreed that this Confidential Agreement and General Release are intended to resolve all claims by Parents individually and on behalf of Student in any forum, including Parents' complaint with the Special Education Due Process Hearing docketed at ODR File No. 15836-1415KE and all claims for money damages, tuition reimbursement, attorney fees and costs, expert fees and/or compensatory education relating to educational programming afforded to Student under federal, state and common law and that arise from, or are related to, the occurrences set forth in any administrative action under and pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA"), its implementing regulations, 34 C.F.R. Part 300; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, its implementing regulation, 34 C.F. R. Part 104; the Americans with Disabilities Act of 1990, 42 U.S.C. § 1983, 1988; 20 U.S.C. § 1232 et seq., and its implementing regulations; the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983, 1985, the Civil Rights Attorney's Fee Award Act of 1976, as amended, 42 U.S.C. § 1988; the United States Constitution; the Pennsylvania Constitution; the Pennsylvania Public School Code of 1949, as amended 24 P.S. § 1-101 et seq., the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951 et seq.; Chapters 14 and 15 of the Regulations of the State Board of Education, 22 Pa. Code Ch. 14 & 15; and any other state or federal law and any and all other claims (administrative and/or legal) that were or could have been answered (administrative and/or legal) from the beginning of time up through the date Parents execute this Agreement. This Agreement compromises disputed claims. It is not to be construed as an admission of liability or wrongdoing by the District. It is acknowledged and agreed that the District has agreed to settle and compromise this matter only in order to avoid further inconvenience and expense.

1

Pursuant to Federal Rule of Evidence 408 and Pennsylvania Rule of Evidence 408, neither this Agreement, General Release nor conduct or statements made in compromise negotiations may be introduced into evidence to prove liability on any claim in any proceeding of any nature whatsoever through the date Parents sign this Agreement. Notwithstanding the above, the parties may introduce this Agreement into evidence in order to enforce the terms of this Agreement only.

**3.     RESERVATION OF RIGHTS:** Notwithstanding any of the language contained in this Agreement, nothing in this Agreement should be construed in any way to release or otherwise extinguish any claims arising out of the education of any of Parents' other children that Parents may have individually or may have on behalf of such children. Further, nothing in this Agreement shall be construed as a release by Parents of any claims that may arise regarding events that occur after the date Parents sign the Agreement.

**4.     TERMS:** In order to resolve all disputes and potential litigation, the School District agrees to fund a total of one thousand hours (1,000) hours of compensatory education up to a rate of sixty dollars ($60.00) for each hour of compensatory education. Any compensatory education that is not used by the Student by the end of the school year after Student turns 21-years-old will revert back to the School District.

       **A.**     The Parties further agree that 1,000 hours of compensatory education specified herein shall be used wholly and exclusively for appropriate educational or remedial instruction programs, related services as that term is defined by the IDEA, 20 U.S.C. § 1400 et seq. ("IDEA") and its implementing regulations, specifically 34 CFR § 300.34 (attached to this agreement as Appendix "A"), which may include but is not limited to courses, services, therapies, transition planning, vocational training and independent living, materials, services of appropriately credentialed professional educators to assist in devising Student's educational program, devices that can be used as assistive technology, as defined by the IDEA, parent training, reasonable transportation costs to and from an educational service provider including actual costs reasonably incurred for such transportation when provided by licensed private carriers or by public transportation or reimbursement for mileage at the IRS approved mileage reimbursement rate, and materials, services, and equipment that further the goals of Student's current or future IEP's and/or will assist Student in overcoming the effects of Student's disabilities, including improving her social, fine or gross motor, behavioral, adaptive and language skills, or preparing her for employment or independent living.     Compensatory education may also be used for two technology purchases. Each technology purchase is defined as a reasonably priced computer and a reasonably priced printer. Compensatory education may be used for unlimited purchases of appropriate educational software. Internet and/or wi-fi access is excluded. Any services for which the hours herein are to be utilized shall be provided by appropriately licensed or credentialed individuals or by individuals with equivalent work experience to appropriately provide the service, and/or licensed facilities. The cost of each compensatory education hour shall not exceed $60.00 per hour.  The hours shall be used to supplement, rather than supplant, services, and programming, products, and materials available under public programs, including Student's current and future IEP and ESY entitlements. The hours will be used for services and programming not provided under Medicaid or any other governmental program for which Student is or may be eligible. The following will not be

reimbursable or payable under this Agreement from the compensatory education hour fund: attorney's fees, matriculating post-secondary college and matriculating post-secondary vocational programs, tuition for an out-of-District or private placement, the purchase of automotive vehicles; home improvement; furniture; leisure travel; recreational equipment and activities that are not intended to mitigate the effects of Student's disabilities; activities intended for personal enrichment not directly related to a specific educational need; services, programs and/or equipment required solely for medical needs; entertainment oriented technology items such as: Wii; Play Station, DS apparatus; Apple phones; and non-educational video games. Recreational activities designed to assist Student with improving her social skills, her behavior, furthering her transitional programming, or otherwise overcoming the effects of her disability are permissible if recommended by an appropriately credentialed professional familiar with the student's disability-related needs. The Parties agree that the costs of the independent evaluation reports by Bonnie Socket, PhD and Sharon Greis, CCC-SLP are also permissible uses of the compensatory education hours.

B.    Within fifty (50) days of the District receiving independent evaluations reports by Bonnie Socket, PhD and independent evaluation from Sharon Greis, CCC-SLP and an executed permission to evaluate form (to be provided contemporaneously with this agreement), the District shall reconvene the IEP Team to consider the findings and recommendations of Parents' independent evaluation reports by Bonnie Socket, PhD and Sharon Greis, CCC-SLP. Nothing in this Agreement shall prohibit Parents from requesting an IEP meeting at any time.

C.    In the event the actual cost of any compensatory education hour exceeds $60.00 per hour, the District shall receive additional credit toward Student's entitlement to one thousand (1,000) hours on a proportional basis consistent with the funding responsibility as outlined herein. Should the services be billed on a basis other than hourly, Student's remaining entitlement shall be reduced by one (1) hour for every $60.00 paid to the provider. On a quarterly basis, provider(s) of compensatory services shall provide a representative of the District with documentation substantiating hours used to date. Said documentation shall include a description of the service, the date(s) provided, the credentials of the provider(s) of the service and the cost. Documentation shall be provided to: The School District of Philadelphia, Attn: Priscilla M. Johnson, Office of Specialized Instructional Services, Attn: Compensatory Education, 440 N. Broad Street, 2nd Floor, Portal "B" Philadelphia, PA 19130-4015; compedu@philasd.org; phone: 215-400-6711; fax: 215-400-4175. The District may modify the individual to receive documentation and shall so notify the Parents of any such change.

D.    The District will pay independent providers that have been pre-approved as District contractors within sixty (60) days of the receipt of appropriate documentation as set forth above. Providers that are not currently School District vendors will be paid within sixty (60) days of approval and the submission of the aforementioned documentation. The District will act on the provider's vendor application within thirty (30) days in good faith and will not withhold approval absent good cause. Bills and or invoices shall be provided to: The School District of Philadelphia, Attn: Priscilla M. Johnson, Office of Specialized Instructional Services, Attn: Compensatory Education, 440 N. Broad Street, 2nd Floor, Portal "B" Philadelphia, PA 19130-4015; compedu@philasd.org; phone: 215-400-6711; fax: 215-400-4175. Parents recognize that in order to obtain reimbursement for compensatory education expenses, Parents

3

must submit documentation substantiating services provided, payments made, and an executed W-9. The Parties agree that the District can, upon submission of documentation reflecting an appropriate expenditure and actual payment, reimburse Law Offices of David J. Berney, P.C., for services provided to the Student that are consistent with the terms and conditions herein.

5. **ATTORNEYS FEES AND COSTS:** The District will, within sixty (60) days of receiving a detailed invoice and the execution of this Agreement, pay reasonable attorney's fees and costs to the Law Offices of David J. Berney, Esquire, P.C. and Law Office of Benjamin J. Hinerfeld pursuant to the IDEIA, 20 U.S.C. §1400 *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 *et seq.*, and the American with Disabilities Act, 42 U.S.C. Sec. 12131, et. seq., for time expended and costs on this matter. Nothing in this Agreement shall limit Parents' rights to additional attorney's fees and costs incurred to enforce this Agreement. The Agreement to pay attorney's fees and costs is not an admission that Parents are a "prevailing party" pursuant to IDEA, 20 U.S.C. §1415(i)(3)(B).

6. **NO ACKNOWLEDGMENT:** Nothing in this Agreement shall constitute nor be construed as an acknowledgment by the District that any of the educational programs, services, materials, or equipment for which payment or reimbursement is made pursuant to the terms of this Agreement constitute part of a free appropriate public education for the Student, nor establish an interest in the continued provision of such programs, services, materials, or equipment beyond the time at which the provider thereof is unwilling or unable to continue or the funds available therefore under the terms of this Agreement are exhausted, whichever is sooner.

7. **ENTIRE AGREEMENT:** This Agreement supersedes any prior oral or written agreement with respect to the subject matter hereof and constitutes the entire, integrated agreement between the Parties; there are no written or oral understandings or agreements, directly or indirectly connected with this Agreement, that are not incorporated herein. This Agreement shall be binding upon and inure to the successors, assigns, heirs, executors, administrators, and legal representatives of the respective Parties hereto.

8. **CONFIDENTIALITY:** The terms and the contents of this Agreement are and shall remain confidential. The Parties will not publish, publicize, comment, or disclose to any person or persons or request, invite, support, or cause another individual to publish, publicize, to comment, or to disclose to anyone the terms or the contents of this Agreement, except that the Parties may disclose information about the Agreement to their counsel, accountants, financial consultants, service providers, tribunals or courts of law, regulators, governmental agencies, and to the School Reform Commission, or otherwise, as may be required by law or to enforce this Agreement.

9. **MISCELLANEOUS:**

(a). This Agreement may be executed in counterparts, including facsimile and email counterparts, each of which shall constitute an original, but all of which, when taken together, shall constitute one instrument.

4

(b).   The terms of this Agreement have been completely read, considered and understood by the Parties, who have had a reasonable opportunity to consult with legal counsel of their choice prior to execution.

(c).   The acceptance of the terms of this Agreement is a voluntary compromise and settlement of a disputed claim or claims.   Fulfillment of the terms of this Agreement is not an admission of any liability by any party named in the Agreement.

(d).   Parents represent and warrant that they possess the educational decision-making authority and legal-decision making authority on behalf of Student necessary to enter into this Agreement on Student's behalf.

(e).   The Parties agree that this Agreement is a Written Agreement reached pursuant to the Resolution Process under 20 U.S.C. § 1415(f)(1)(B) and 34 C.F.R. § 310.510.


IN WITNESS WHEREOF, and intending to be legally bound, we have hereunto set our hands and seals this _____20_____ day of _____March_____, 2015.


_____3/20/15_____
Date

_____Wendy N_____ _____(SEAL)
Wendy N
Parent of L        N


_____3 - 20 - 15_____
Date

_____Benjamin N_____ _____(SEAL)
Benjamin N
Parent of L        N


_____4/1/15_____
Date

_____Deborah. Griffis_____ (SEAL)
Deb Griffis
Special Education Director
School District of Philadelphia

**APPROVED AS TO FORM ONLY:**

2/20/2015
_____
Date

_____
Jennifer Y. Sang, Esquire
Attorney for Wendy N          Parent

3/20/2015
_____
Date

_____
Benjamin J. Hinerfeld, Esquire
Attorney for Benjamin N        , Parent

3/23/15
_____
Date

_____
Pamela Peltzman, Esquire
Attorney for School District of Philadelphia

6

# APPENDIX A

language normally used by the child in the home or learning environment.

(b) For an individual with deafness or blindness, or for an individual with no written language, the mode of communication is that normally used by the individual (such as sign language, Braille, or oral communication).

(Authority: 20 U.S.C. 1401(20))

§300.30 Parent.

(a) *Parent* means—

(1) A biological or adoptive parent of a child;

(2) A foster parent, unless State law, regulations, or contractual obligations with a State or local entity prohibit a foster parent from acting as a parent;

(3) A guardian generally authorized to act as the child's parent, or authorized to make educational decisions for the child (but not the State if the child is a ward of the State);

(4) An individual acting in the place of a biological or adoptive parent (including a grandparent, stepparent, or other relative) with whom the child lives, or an individual who is legally responsible for the child's welfare; or

(5) A surrogate parent who has been appointed in accordance with §300.519 or section 639(a)(5) of the Act.

(b) (1) Except as provided in paragraph (b)(2) of this section, the biological or adoptive parent, when attempting to act as the parent under this part and when more than one party is qualified under paragraph (a) of this section to act as a parent, must be presumed to be the parent for purposes of this section unless the biological or adoptive parent does not have legal authority to make educational decisions for the child.

(2) If a judicial decree or order identifies a specific person or persons under paragraphs (a)(1) through (4) of this section to act as the "parent" of a child or to make educational decisions on behalf of a child, then such person or persons shall be determined to be the "parent" for purposes of this section.

(Authority: 20 U.S.C. 1401(23))

§300.31 Parent training and information center.

*Parent training and information center* means a center assisted under sections 671 or 672 of the Act.

(Authority: 20 U.S.C. 1401(25))

§300.32 Personally identifiable.

*Personally identifiable* means information that contains—

(a) The name of the child, the child's parent, or other family member;

(b) The address of the child;

(c) A personal identifier, such as the child's social security number or student number; or

(d) A list of personal characteristics or other information that would make it possible to identify the child with reasonable certainty.

(Authority: 20 U.S.C. 1415(a))

§300.33 Public agency.

*Public agency* includes the SEA, LEAs, ESAs, nonprofit public charter schools that are not otherwise included as LEAs or ESAs and are not a school of an LEA or ESA, and any other political subdivisions of the State that are responsible for providing education to children with disabilities.

(Authority: 20 U.S.C. 1412(a)(11))

§300.34 Related services.

(a) *General. Related services* means transportation and such developmental, corrective, and other supportive services as are required to assist a child with a disability to benefit from special education, and includes speech-language pathology and audiology services, interpreting services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, early identification and assessment of disabilities in children, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services for diagnostic or evaluation purposes. Related services also include school health services and school nurse services, social work services in schools, and parent counseling and training.

(b) *Exception; services that apply to children with surgically implanted devices, including cochlear implants.*

(1) Related services do not include a medical device that is surgically implanted, the optimization of that device's functioning (e.g., mapping), maintenance of that device, or the replacement of that device.

(2) Nothing in paragraph (b)(1) of this section—

(i) Limits the right of a child with a surgically implanted device (e.g., cochlear implant) to receive related services (as listed in paragraph (a) of this section) that are determined by the IEP Team to be necessary for the child to receive FAPE.

(ii) Limits the responsibility of a public agency to appropriately monitor and maintain medical devices that are needed to maintain the health and safety of the child, including breathing, nutrition, or operation of other bodily functions, while the child is transported to and from school or is at school; or

(iii) Prevents the routine checking of an external component of a surgically implanted device to make sure it is functioning properly, as required in §300.113(b).

(c) *Individual related services terms defined.* The terms used in this definition are defined as follows:

(1) *Audiology* includes—

(i) Identification of children with hearing loss;

(ii) Determination of the range, nature, and degree of hearing loss, including referral for medical or other professional attention for the habilitation of hearing;

(iii) Provision of habilitative activities, such as language habilitation, auditory training, speech reading (lip-reading), hearing evaluation, and speech conservation;

(iv) Creation and administration of programs for prevention of hearing loss;

(v) Counseling and guidance of children, parents, and teachers regarding hearing loss; and

(vi) Determination of children's needs for group and individual amplification, selecting and fitting an appropriate aid, and evaluating the effectiveness of amplification.

(2) *Counseling services* means services provided by qualified social workers, psychologists, guidance counselors, or other qualified personnel.

(3) *Early identification and assessment of disabilities in children* means the implementation of a formal plan for identifying a disability as early as possible in a child's life.

(4) *Interpreting services* includes—

(i) The following, when used with respect to children who are deaf or hard of hearing: Oral transliteration services, cued language transliteration services, sign language transliteration and interpreting services, and transcription services, such as communication access real-time translation (CART), C-Print, and TypeWell; and

(ii) Special interpreting services for children who are deaf-blind.

(5) *Medical services* means services provided by a licensed physician to determine a child's medically related disability that results in the child's need for special education and related services.

(6) *Occupational therapy*—

(i) Means services provided by a qualified occupational therapist; and

(ii) Includes—

(A) Improving, developing, or restoring functions impaired or lost through illness, injury, or deprivation;

(B) Improving ability to perform tasks for independent functioning if functions are impaired or lost; and

(C) Preventing, through early intervention, initial or further impairment or loss of function.

(7) *Orientation and mobility services*—

(i) Means services provided to blind or visually impaired children by qualified personnel to enable those students to attain systematic orientation to and safe movement within their environments in school, home, and community; and

(ii) Includes teaching children the following, as appropriate:

(A) Spatial and environmental concepts and use of information received by the senses (such as sound, temperature and vibrations) to establish, maintain, or regain orientation and line of travel (e.g., using sound at a traffic light to cross the street);

(B) To use the long cane or a service animal to supplement visual travel skills or as a tool for safely negotiating the environment for children with no available travel vision;

(C) To understand and use remaining vision and distance low vision aids; and

(D) Other concepts, techniques, and tools.

(8)(i) *Parent counseling and training* means assisting parents in understanding the special needs of their child;

(ii) Providing parents with information about child development; and

(iii) Helping parents to acquire the necessary skills that will allow them to support the implementation of their child's IEP or IFSP.

(9) *Physical therapy* means services provided by a qualified physical therapist.

(10) *Psychological services* includes—

(i) Administering psychological and educational tests, and other assessment procedures;

(ii) Interpreting assessment results;

(iii) Obtaining, integrating, and interpreting information about child behavior and conditions relating to learning;

(iv) Consulting with other staff members in planning school programs to meet the special educational needs of children as indicated by psychological tests, interviews, direct observation, and behavioral evaluations;

(v) Planning and managing a program of psychological services, including psychological counseling for children and parents; and

(vi) Assisting in developing positive behavioral intervention strategies.

(11) *Recreation* includes—

(i) Assessment of leisure function;

(ii) Therapeutic recreation services;

(iii) Recreation programs in schools and community agencies; and

(iv) Leisure education.

(12) *Rehabilitation counseling services* means services provided by qualified personnel in individual or group sessions that focus specifically on career development, employment preparation, achieving independence, and integration in the workplace and community of a student with a disability. The term also includes vocational rehabilitation services provided to a student with a disability by vocational rehabilitation programs funded under the Rehabilitation Act of 1973, as amended, 29 U.S.C. 701 *et seq.*

(13) *School health services and school nurse services* means health services that are designed to enable a child with a disability to receive FAPE as described in the child's IEP. School nurse services are services provided by a qualified school nurse. School health services are services that may be provided by either a qualified school nurse or other qualified person.

(14) *Social work services in schools* includes—

(i) Preparing a social or developmental history on a child with a disability;

(ii) Group and individual counseling with the child and family;

(iii) Working in partnership with parents and others on those problems in a child's living situation (home, school, and community) that affect the child's adjustment in school;

(iv) Mobilizing school and community resources to enable the child to learn as effectively as possible in his or her educational program; and

(v) Assisting in developing positive behavioral intervention strategies.

(15) *Speech-language pathology services* includes—

(i) Identification of children with speech or language impairments;

(ii) Diagnosis and appraisal of specific speech or language impairments;

(iii) Referral for medical or other professional attention necessary for the habilitation of speech or language impairments;

(iv) Provision of speech and language services for the habilitation or prevention of communicative impairments; and

(v) Counseling and guidance of parents, children, and teachers regarding speech and language impairments.

(16) *Transportation* includes—

(i) Travel to and from school and between schools;

(ii) Travel in and around school buildings; and

(iii) Specialized equipment (such as special or adapted buses, lifts, and ramps), if required to provide special transportation for a child with a disability.

(Authority: 20 U.S.C. 1401(26))

**§ 300.35  Scientifically based research.**

*Scientifically based research* has the meaning given the term in section 9101(37) of the ESEA.

(Authority: 20 U.S.C. 1411(e)(2)(C)(xi))

**§ 300.36  Secondary school.**

*Secondary school* means a nonprofit institutional day or residential school, including a public secondary charter school that provides secondary education, as determined under State law, except that it does not include any education beyond grade 12.

(Authority: 20 U.S.C. 1401(27))

**§ 300.37  Services plan.**

*Services plan* means a written statement that describes the special education and related services the LEA will provide to a parentally-placed child with a disability enrolled in a private school who has been designated to receive services, including the location of the services and any transportation necessary, consistent with § 300.132, and is developed and implemented in accordance with §§ 300.137 through 300.139.

(Authority: 20 U.S.C. 1412(a)(10)(A))

**§ 300.38  Secretary.**

*Secretary* means the Secretary of Education.

(Authority: 20 U.S.C. 1401(28))

**§ 300.39  Special education.**

(a) *General.* (1) *Special education* means specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability, including—

(i) Instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings; and

(ii) Instruction in physical education.

(2) *Special education* includes each of the following, if the services otherwise meet the requirements of paragraph (a)(1) of this section—

(i) Speech-language pathology services, or any other related service, if the service is considered special education rather than a related service under State standards;

(ii) Travel training; and

(iii) Vocational education.

(b) *Individual special education terms defined.* The terms in this definition are defined as follows:

(1) *At no cost* means that all specially-designed instruction is provided without charge, but does not preclude incidental fees that are normally charged to nondisabled students or their parents as a part of the regular education program.

(2) *Physical education* means—